IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DANIEL ADAM BEATY,                    )
                                      )
         Plaintiff,                   )
                                      )
v.                                    )         CIVIL ACT. NO.  2:20CV279-ECM
                                      )                    (wo)
JEFFERSON S. DUNN, in his             )
Individual capacity, *et al*.,        )
                                      )
         Defendants.                  )

**MEMORANDUM OPINION AND ORDER**

Now pending before the Court are a motion to dismiss filed by the State of Alabama ("the State")(doc. 107); a motion to dismiss, or in the alternative to strike, filed by Lancie Cannon ("Cannon"), Tameka Grey ("Grey"), Joshua Merritt ("Merritt"), and Deon Steele ("Steele")(doc. 108);  a motion to dismiss filed by Grant Culliver ("Culliver") (doc. 110); and a motion to strike or, alternatively, a motion to dismiss, filed by Jefferson S. Dunn ("Dunn"), Ruth Naglich ("Naglich"), Greg Lovelace ("Lovelace"), Terrance G. McDonnell ("McDonnell"), Kenneth Drake ("Drake"), Pamela Harris ("Harris"), and Karla Jones ("Jones") (doc. 112).

The Plaintiff, Daniel Adam Beaty ("Beaty") has filed a complaint, an amended complaint, and a second amended complaint (doc. 105).  The pending motions are directed to the second amended complaint. In addition to the Defendants who have moved to

dismiss, set out above, Beaty also has named as defendants[1] in this case Elizabeth Laseter ("Laseter"), Markeon Person ("Person"), Robert Lindsey ("Lindsey"), Joshua Pittman ("Joshua Pittman"), Jonathan Pittman ("Pittman"), Ladarion Baldwin ("Baldwin"), and David Dennis ("Dennis").[2]  In the second amended complaint, Beaty uses the shorthand "Administrative Supervisors" to refer to Dunn, McDonnell, Lovelace, Culliver, and Naglich.  The second amended complaint refers to "Prison Supervisors" as including Defendant Unknown Assistant Wardens, Jones, Drake, Harris, Laseter, and Defendant Unknown Commanders.

Beaty has brought claims of excessive force under the Eighth and Fourteenth Amendments against Person and Lindsey (count I);[3] failure to intervene under the Eighth and Fourteenth Amendment against Administrative Supervisors, Prison Supervisors, and Laseter, Joshua Pittman, Pittman, Grey, and Baldwin (count II); a claim of deliberate indifference to serious medical needs against Administrative Supervisors, Prison Supervisors, and Person, Grey, Baldwin, Steele, Dennis, Cannon, Merritt, Laseter, Lindsey, Joshua Pittman, Pittman, and Unknown Officers (count III); a claim for failure to protect against Administrative Supervisors and Prison Supervisors (count IV); a claim for State-created danger under the Eighth and Fourteenth Amendment against all individual

---

[1] David Gallew, Scott Sides, and Arnoldo Mercado are identified as "defendants" in the body of the second amended complaint (doc. 105 paras. 34, 35 & 36), but their names were not included in the caption of the second amended or original complaint, they are not docketed as parties, and have not been served with any complaint; therefore, they are not parties in this case.

[2] These Defendants have not responded either by answer or motion to dismiss the second amended complaint.

[3] No motion to dismiss has been filed as to this claim.

Defendants (count V); federal civil conspiracy against all Defendants (count VIa);[4] state law civil conspiracy against all Defendants (Count VIb); state law negligent/wanton retention against the State, Administrative Supervisors, and Prison Supervisors (count VII);[5] state law intentional infliction of emotional distress against Person, Lindsey, Baldwin, Grey, Laseter, Joshua Pittman, and Pittman (count VIII); and a state law claim of indemnification against the State (count IX).

The second amended complaint expressly sets out that "[u]nless otherwise noted, Plaintiff sues each of the Individual Defendants in his or her individual capacity." (Doc. 105 para. 40). No other designation is used for individuals. The Court, therefore, construes the second amended complaint as bringing only individual capacity claims against the individual Defendants.[6]

Upon consideration of the motions, the briefs, the record, and applicable law, and for reasons to be discussed, the motions are due to be GRANTED in part and DENIED in part, but Beatty will be given a last opportunity to state some of his claims in a new amended complaint, as set forth below.

---

[4] There are two counts labeled count VI in the second amended complaint and the remaining counts do not account for that redundancy, so the Court will refer to the two counts as VIa and VIb.

[5] In the caption of this count, Beaty refers to ADOC, but ADOC has not been named as a Defendant in this case.

[6] The Court's interpretation of this plain language is consistent with the Defendants' stated understanding that the individuals are sued only in their individual capacities. (Doc. 113 at 17).

# I.   FACTS

Beaty has been incarcerated with the Alabama Department of Corrections (ADOC) since April of 2017 and was moved to Ventress Correctional Institution ("Ventress") in late 2017.

During the events in question, Dunn was the Commissioner of the ADOC; Culliver was the Associate Commissioner for Operations; McDonnell was the Associate Commissioner for Plans and Programs, responsible for the classification of prisoners and established a system of what is known as "Hot Bays;" Lovelace was the Deputy Commissioner of Maintenance; and Naglich was the Associate Commissioner of Health Services, responsible for the administration of medical and mental health services at Ventress.

Jones was the Warden at Ventress during the events in question. Other employees of Ventress have also been named as Defendants, including Drake, Harris, and Laseter. Another group of Ventress sergeants and officers—Person, Lindsey, Baldwin, Grey, Pittman, Joshua Pittman, Cannon, Merritt, Dennis, and Steele—are alleged to have been on duty during the events which are the subject of Beaty's claims.

Beaty alleges in the second amended complaint that on April 24, 2018, he was cornered by three inmates who attempted to extort from him.  The inmates assaulted him and Beaty fled from the dorm to the lobby.  Beaty sought medical help from Person.  The second amended complaint alleges, however, that Beaty was led away from the direction of the infirmary by Person.  Lieutenant Calhoun then escorted Beaty to the infirmary but

left him under Person's supervision.  Person then escorted Beaty to the "Hot Bay" which is a term given by ADOC to refer to housing for inmates considered to be violent. Beaty pleaded with Person that he not place Beaty there, but when it appeared that he would be housed in the Hot Bay, Beaty tried to get away from Person.  Person put on gloves, handcuffed Beaty, led him to the lobby of the Hot Bay Dorm, instructed Baldwin to close the lobby door and move a screen to obstruct the view outside of the lobby, instructed Grey to shut the door, and then Person struck Beaty in the jaw with his riot glove.  The second amended complaint alleges that the assault was unnecessary to accomplish any reasonable purpose, disclocated Beaty's jaw, fractured the jaw in two places, and caused a bone fragment to protrude from his gum.  It further alleges that Grey and Baldwin were able to witness this blow but made no attempt to render aid.  Beaty was bleeding profusely.  Person ordered the lobby cleaned and sent another prisoner to get a clean uniform for Beaty.  Beaty had to change uniforms a second time due to blood stains and filled multiple cups with his blood. Person did not take Beaty to the infirmary, but left him on a bench in the dorm and departed.  Beaty begged Steele and Dennis and other unknown officers to take him to the infirmary, but they did not.

Cannon, Merritt, and other unknown officers came to the Hot Bay at shift change, witnessed Beaty still bleeding profusely, but ignored Beaty's pleas to get him medical help.

It was not until 10:00 p.m., approximately four hours after the alleged assault, that a nurse who came to the dorm to dispense medication took Beaty to the infirmary.  The nurse called an ambulance.  Laseter, Lindsey, Joshua Pittman, and Pittman asked Beaty

what had happened. Beaty said that he had been assaulted by Person.  Lindsey pried Beaty's mouth open, causing his skin to tear, a piece of bone to stick through his gum, and more blood to flow from his mouth.  Laseter observed Lindsey do this, made a gagging sound, and ran from the room.  The ambulance which had been called was cancelled.  The second amended complaint alleges that Lindsey, Laseter, Pittman, and Joshua Pittman did nothing to stop Beaty's bleeding or otherwise treat him.  After an hour, Beaty was handcuffed and taken to the hospital in a prison van.  Beaty was first taken to a hospital in Troy, but due to the seriousness of his injuries, was taken to Baptist Medical Center South in Montgomery, Alabama for surgery.

After he returned to Ventress, first having been transferred to another facility, Beaty was threatened by Person.  Beaty was transferred away from Ventress in January 2019.

Person was dismissed from his employment due to his assault of Beaty.  (Doc. 105).

In addition to the facts specific to Beaty, the second amended complaint alleges that the ADOC condones the use of excessive force because of chronic understaffing and overcrowding.  The second amended complaint lists incidents of assault of ADOC prisoners by correctional officers at Ventress and other ADOC facilities from 2010 until Beaty's incident and separately lists other incidents which occurred after Beaty's incident. The second amended complaint alleges that the United States Department of Justice issued a Notice Letter after an investigation and identified the combination of ADOC's overcrowding and understaffing as key factors leading to inadequate supervision, unsafe housing, and violence.  It further alleges that although Dunn, Culliver, and other

6

Defendants were aware of the history of widespread violence through the ADOC's prisons and the connection between violence and overcrowding and understaffing, they failed to take meaningful steps to alter the environment before Beaty's assault. The second amended complaint includes a quote from a January 2020 budget presentation by Dunn that the rate of violence in ADOC's prisons remains "unacceptably high." (*Id.* para. 136).

## II.   STANDARDS OF REVIEW

### A. Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the *Federal Rules of Civil Procedure*, may be a factual or facial attack on subject matter jurisdiction. *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1238 (11th Cir. 2002). A factual attack permits the district court to weigh evidence outside the pleadings to satisfy itself of the existence of subject matter jurisdiction in fact. *Id.* at 1237. However, a facial attack merely questions the sufficiency of the pleading. *Id.* Under a facial attack, the district court accepts the plaintiff's allegations as true and need not look beyond the face of the complaint to determine whether the court has subject matter jurisdiction. *Id.* If the court then finds that the pleading does not allege a basis for subject matter jurisdiction, the court will dismiss the complaint.

### B. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## III.   DISCUSSION

As set out above, there are pending motions to dismiss filed by the State, Culliver, the Defendants referred to in the second amended complaint as the Prison Supervisors and the Administrative Supervisors, and Grey, Cannon, Merritt, and Steele. While each motion raises unique grounds for dismissal, there are also areas of overlap in the arguments raised. The Court will address together arguments raised by multiple motions.

**A.  Sovereign Immunity**

Various Defendants, including the State, move for dismissal based on a lack of subject-matter jurisdiction, arguing that sovereign immunity bars Beaty's claims for damages against the State. *See Board of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).

The Court notes first that the second amended complaint contains a prayer for relief which seeks judgment against "all Defendants."  Furthermore, count VII specifically lists the State as a defendant, and counts VIa and VIb are brought against "all Defendants."  To the extent that those claims for damages are against the State, they are barred by sovereign immunity. *Board of Trs. of the Univ. of Ala.*, 531 U.S. at 363.

In his brief, Beaty clarifies that he is suing the State as the party obligated by state law to pay damages if his claims against the individual State employees ultimately are proven in this matter. (Doc. 117 at 52).  Beaty argues that the General Liability Trust Fund legislation waived the State's immunity as an indemnifier.

The State argues that although Beaty has pleaded that the State is liable as an indemnitor pursuant to the statute which created the General Liability Trust Fund, that statute does not create insurance, but even if the General Liability Trust Fund created a claim for indemnification, that belongs to the Defendants, not Beaty. *See* ALA. CODE § 36-1-6.1.  The State also points to the General Liability Trust Fund Program Guidelines for the proposition that no third party has a right to join the General Liability Trust Fund as a party in an action to establish the liability of a covered employee. (Doc. 107 at 9).

As to the indemnity claim in count IX, the second amended complaint does not plead a mechanism by which Beaty brings that claim in court. Beaty also does not point to such a mechanism in response to the State's argument that under the General Liability Trust Fund Program Guidelines a third-party cannot bring a claim for indemnity. *See Am. Auto. Ins. Co. v. McDonald*, 812 So. 2d 309, 311 (Ala. 2001)("One claiming a private right of action within a statutory scheme must show clear evidence of a legislative intent to impose civil liability for a violation of the statute."). Count IX is, therefore, due to be dismissed for failure to state a claim.

**B.     Fictitious Parties**

Multiple Defendants have asked that Defendant Unknown Assistant Wardens, Defendant Unknown Commanders, Defendant Unknown Officers, and Defendant Unknown I&I Officers be dismissed as improperly named fictitious parties. Beaty argues that the movants are confusing suing a party that is unknowable with a party that is presently unknown. Beaty also questions the Defendants' ability to raise this argument and argues in response that the identities of parties who were on duty during the times in question is discoverable.

Fictitious-party practice is allowed in federal court under some circumstances. *See Dean v. Barber*, 951 F.2d 1210 (11th Cir. 1992). In *Dean*, the Eleventh Circuit held the district court erred by denying the plaintiff's motion to join a "John Doe" defendant before allowing the plaintiff an opportunity to learn the John Doe defendant's name through discovery. *Id.* at 1215. In so-ruling, the court noted a difference between "suing fictitious

parties" and "real parties sued under a fictitious name," and held that, where the plaintiff had named "Chief Deputy of the Jefferson County Jail John Doe" as a defendant, the name was specific enough to comport with the requirement of Rule 10 of the *Federal Rules of Civil Procedure* that the pleading name the party. *Id.* at 1215, n.6. The use of "John Doe" was "at the very worst, surplusage." *Id.* Thus, the defendant could have been served with the complaint, despite the use of the "John Doe" title. *Id.*

In this case, Beaty has identified categories of unknown officers, and has pleaded that they were on duty. This identification does not rise to the level of specificity identified by the Eleventh Circuit. *See Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020) (descriptions ranging in "specificity from the highly generic (e.g., 'a male detective,' 'one of the officers at the hospital,' or 'an FBI Agent') to the ever-so-slightly less generic (e.g., '[a] female white officer about 5 feet 10–11 inches in height' or 'a middle-aged white male [officer]') fell well short of enabling a process server to identify a specific individual"); *see also Daniel v. Howell*, 2020 WL 7029152, at *2 (M.D. Ala. Nov. 30, 2020) (labeling the fictitious Defendants as officers 1, 2, and 3, absent some other unambiguous description, lacks the necessary specificity to qualify under the limited exception to the prohibition on fictitious party practice in federal court). The fictitious parties are, therefore, due to be DISMISSED. *See Bozeman v. Cty. of Elmore*, 2021 WL 2954004, at *2–3 (M.D. Ala. 2021).

### C. Shotgun Pleading

Multiple Defendants have sought to dismiss or strike the second complaint on the ground that it is a shotgun pleading. A complaint that violates Rule 8(a) or Rule 10(b) is often referred to as shotgun pleading. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). There are four types of shotgun pleadings: (1) complaints containing multiple counts where each count adopts the allegations of all preceding counts, (2) complaints that contain conclusory, vague, and immaterial facts not obviously connected to any particular cause of action, (3) complaints that fail to separate into a different count each cause of action or claim for relief, and (4) complaints that assert[ multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. *Id.* at 1322. While the Court agrees that the second amended complaint bears some of the hallmarks of a shotgun pleading because it incorporates all paragraphs by reference and often groups Defendants together in the same claim, the Court will also examine other grounds for dismissal to determine the extent to which they may render re-pleading futile. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004)(holding that leave to amend is justified by futility when the complaint as amended is still subject to dismissal).

### D. Federal Claims

#### 1. Fourteenth and Eighth Amendment Claims

Beaty's 42 U.S.C. § 1983 claims are pleaded as violations of the Eighth and Fourteenth Amendments. (Doc. 105). The motions to dismiss seek dismissal of the

Fourteenth Amendment aspect of these claims, arguing that because Beaty is in custody, his avenue for relief is only the Eighth Amendment.  Beaty's response is that the Eighth Amendment's prohibitions are incorporated to prohibit unconstitutional conduct by state employees through the Fourteenth Amendment and that deliberate indifference is governed by the same standards under the Eighth and Fourteenth Amendments.

Because the Fourteenth Amendment is necessary for invocation of the Eighth Amendment against state actors, *Rhodes v. Chapman*, 452 U.S. 337, 344-45 (1981), the motions to dismiss are due to be DENIED as to the Fourteenth Amendment claims to the extent that the Fourteenth Amendment allows Beaty's Eighth Amendment claims to be asserted against State actors.

### 2. *Qualified Immunity*

The motions to dismiss raise qualified immunity as a defense to some, but not all, of the Eighth and Fourteenth Amendment claims.  Qualified immunity protects government officials from suit if they are "performing discretionary functions" and "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 525–26 (1985).  It balances the need to hold the government accountable with the need to protect officers from the distractions of litigation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

"We have said many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000) (quotations omitted).

In resolving questions of qualified immunity, courts engage in a two-pronged inquiry. The first asks whether the facts, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right [.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The second prong of the qualified-immunity analysis asks whether the right in question was "clearly established" at the time of the violation. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Governmental actors are "shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* "[T]he salient question . . . is whether the state of the law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." *Id.* at 741.

The Court begins with the failure to protect, intervene, and State-created danger claims which, as will be explained, appear interrelated, and then turns to the deliberate indifference and conspiracy claims.

a. *Failure to Protect*

Beaty brings a failure to protect claim in count IV against the Administrative Supervisors—Dunn, McDonnell, Lovelace, Culliver, Naglich and against the Prison

Supervisors—Jones, Drake, Harris, and Laseter.  Of those Defendants, Dunn, McDonnell, Lovelace, Culliver, Naglich, Jones, Drake, and Harris have moved to dismiss that claim.

Under the Eighth Amendment, prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014).  "A prison official violates the Eighth Amendment 'when a substantial risk of serious harm, of which the official is subjectively aware, exists[,] the official does not respond reasonably to the risk,'" and the official's actions or inaction causes the injury. *Id.*

Culliver moves to dismiss this claim arguing that Beaty has no allegations of a failure to protect specifically against him, but rather groups him with other ADOC officials. He also argues that the report relied on by Beaty and statements made by Dunn regarding violence in prison occurred after Culliver's retirement. Culliver further points to allegations of the second amended complaint that ADOC underwent a recruiting and marketing initiative to address chronic understaffing and argues that this undermines Beaty's claim. (Doc. 105 para. 135).  Naglich and McConnell similarly argue that their positions, as alleged in the second amended complaint, of Associate Commissioner of Health Services and of Plans and Programs, respectively, did not include authority to protect inmates.  The Defendants further argue that the second amended complaint identifies four prior incidents of violence at Ventress over a period of seven years, which is insufficient to constitute a widespread pattern.  Only one of the incidents involved either Person or Lindsey. (Doc. 105 para. 143x).

Beaty's argument in response is that he need not show deliberate indifference to a particular attacker and has adequately pleaded instances of violence among prisoners and staff at ADOC facilities, as well as the means by which the Defendants became aware of the risk, including the Department of Justice investigation, correspondence, and reports. Beaty points to the allegation of the second amended complaint that Dunn admitted during a budget presentation that the rate of violence in ADOC prisons remains unacceptably high. (*Id.* para. 136).

With respect to this claim, the Court agrees with the Defendants who have argued that the pleading is insufficient to give them notice of the precise nature of the claim regarding each Defendant, particularly those Defendants the second amended complaint does not appear to allege had authority over inmate protection.  For example, Beaty relies on Dunn's concession that there is violence in the facilities, but because Beaty does not differentiate between the Defendants, the Court cannot evaluate the sufficiency of the allegations with respect to knowledge of each Defendant. *See McCall v. Bank of Am., N.A.*, 2016 WL 5402748, at *2 (M.D. Ala. 2016)(finding "in light of the complaint's conclusory language and over-use of incorporations by reference, mere reference to 'Defendants' does not give fair notice to either opposing party.").

Although the Defendants have argued that the inadequate pleading should be dismissed with prejudice, they alternatively request that Beaty be required to replead his claims.  (Doc. 126 at 4).  The Court finds that the failure to protect claim is due to be DISMISSED as against  Dunn, McDonnell, Lovelace, Culliver, Naglich, Jones, Drake, and

Harris, but finds that Beaty should be given a last opportunity to attempt to plead a basis for supervisor liability for failure to protect. Therefore, these claims will be dismissed without prejudice, with leave granted to Beaty to file a third amended complaint that complies with the *Federal Rules of Civil Procedure*. *Id.* at *3.

### b.  Failure to Intervene

In count II, Beaty asserts a claim against the Administrative Supervisors—Dunn, McDonnell, Lovelace, Culliver and Naglich; the Prison Supervisors—Jones, Drake, Harris, Laseter; and against Joshua Pittman, Pittman, Grey, and Baldwin. Within the count, Beaty alleges that Baldwin, Grey, Lindsey, Laseter, Pittman, and Joshua Pittman had a reasonable opportunity to prevent the assault on Beaty. He also claims that Jones, Dunn, McDonnell, Lovelace, Culliver, Naglich, Drake, Harris, and Laseter knew that correctional officers were using excessive force but failed to supervise, discipline, or train correctional officers to prevent officers such as Person and Lindsey from using excessive force. Of the Defendants named in this count, only Grey, Culliver, Dunn, Naglich, Lovelace, McDonnell, Drake, Jones, and Harris have filed motions to dismiss.

The Court will separately address the claims against Grey and the Administrative Supervisors and Prison Supervisors.

### i.  Grey

"[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the

officer is directly liable under Section 1983." *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998).

The second amended complaint alleges that Grey was on duty in the dorm on April 24, 2018, and witnessed Person's assault on Beaty. (Doc. 105 para. 1). The second amended complaint further alleges that Grey did nothing to intervene or stop the assault. (*Id.* para. 26). Beaty pleads additional facts that Person directed Grey to lock the front door to the dorm and to the observation booth, which Grey did, and that Grey could still observe Person and Beaty at the time that Beaty was struck. (*Id.* paras. 66 & 67).

Although the Defendants have invoked qualified immunity in their motion, they have only raised that ground for dismissal as to the "State-created danger" theory. (Doc. 108 at 1 & Doc. 127 at 6). With respect to the failure to intervene claim, the motion only argues that the second amended complaint is a shotgun pleading.

Under the facts as alleged, Grey was present, witnessed, and failed to stop Person's actions, thereby alleging facts to support the elements of his claim as asserted against Grey specifically. The Court cannot agree, therefore, that this claim is due to be dismissed under the shotgun pleading ground advanced by the Defendants. Accordingly, Court must conclude that the motion to dismiss is due to be DENIED as to the claim for failure to intervene against Grey.

ii.      Administrative and Prison Supervisors

Because supervisors cannot be held liable for actions taken by their subordinates under § 1983 on the basis of respondeat superior, a plaintiff seeking to proceed against a

supervisor must establish a causal connection between the supervisor's actions and the alleged constitutional violation. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). One way to do that is to demonstrate a policy or custom which results in deliberate indifference to established rights. *Id.* at 1235. "A failure to stop claim under a theory of supervisory liability only requires that the supervisor (1) have the ability to prevent or discontinue a known constitutional violation by exercising his or her authority over the subordinate who commits the constitutional violation, and (2) subsequently fails to exercise that authority to stop it." *Keating v. City of Miami*, 598 F.3d 753, 765 (11th Cir. 2010). "The difference between a direct failure to intervene claim and a failure to stop claim under a theory of supervisory liability lies in the position and authority of the defendant with respect to the person who commits the constitutional violation." *Id.*

Culliver, Dunn, McDonnell, Lovelace, Naglich, Jones, Drake, and Harris move for dismissal of the failure to intervene claim primarily on the ground that they cannot be held liable for a failure to intervene because there are no allegations in the second amended complaint that they witnessed any violation of law and failed to intervene. Beaty's claims against these Defendants are somewhat difficult to differentiate from one another, but it appears that his failure to intervene claim claims that supervisors can be held liable based on subordinates' failure to intervene in others' use of force, whereas in his failure to protect claim, discussed above, he claims that supervisors can be held liable for failing to prevent subordinates from using excessive force. In other words, by claiming a failure to intervene by supervisors who were not on the scene, Beaty does not contend that the supervisors are

19

liable because they failed to stop Person and Lindsey while they were using excessive force against Beaty, but that they can be held liable for their subordinates' failures to stop Person or Lindsey.  With that understanding of the claim, in their reply briefs, Defendants take the position that there is no authority which clearly establishes that a supervisor can be held liable for his or her subordinate's failure to intervene when the supervisor was not present at the time of the constitutional violation.

Although there is a reference to incidents of failure to intervene within the facts of the second amended complaint, the count itself does not refer to knowledge of those facts by the Administrative or Prison Supervisors. Instead, Beaty's allegations against the Administrative and Prison Supervisors which are specific to this claim only are that the Defendants knew that correctional officers were routinely using excessive force against prisoners at Ventress and other ADOC facilities, not that they knew correctional officers were failing to intervene in a use of force. (Doc. 105 para. 173).   Beaty has not cited, and this Court is not aware of any, precedent clearly establishing that a supervisor can be held liable for a subordinate's failure to intervene in another's use of force based on the supervisors' knowledge of the previous use of force. *Cf. Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021)(explaining that specificity of prior precedent is important in the context of an excessive force claim).  Therefore, unlike the failure to protect claim discussed above, the Court finds that even if there is a violation of law, that violation is not clearly established, and the qualified immunity defense renders repleading futile with respect to

the failure to intervene claim as against Culliver, Dunn, McConnell, Lovelace, Naglich, Drake, Jones, and Harris. *See Hall*, 367 F.3d at 1263.

c. *State-created Danger*

In count V Beaty brings a claim for "State-created danger," alleging that he was entitled to be free from an unreasonable risk of harm while in custody.  The claim for "State-created danger" is asserted against all individual Defendants and the movants have argued that the Eleventh Circuit does not recognize a claim for state-created danger, citing *Vaughn v. City of Athens*, 176 F. App'x 974 (11th Cir. 2006) and *Waddell v. Hendry Cty. Sheriff's Off.*, 329 F.3d 1300 (11th Cir. 2003).

Beaty argues that in *Vaughn*, the court distinguished non-custodial cases and specifically noted that "the government's automatic duty to protect persons from harm by third parties is limited to custodial relationships. . . ." *Vaughn*, 176 F. App'x at 977.  In *Vaughn*, the court noted that in *Waddell*, the court stated that the "state created danger doctrine" is no longer valid. *Id.* at 976 n.1.  *Waddell* involved an injury from a car wreck involving an inmate who was being used as a confidential informant. *Waddell*, 329 F.3d at 1305.  The court explained that the "special danger" analysis formerly used had applied when a government entity was held liable for the failure to protect victims from harm caused by third parties where the state put the victim in danger. *Id.*  This is not that case. In this case, Beaty was in custody, so whether a claim exists for protection from a state-created danger outside of the custodial relationship is not relevant here.

It appears to the Court that the duty owed when a person is in a custodial relationship is cognizable through a failure to protect claim, which Beaty has brought in this case. A separate claim for a State-created danger in a custodial setting, if cognizable, is a novel one. Therefore, it appears to the Court that the State-created danger claim, even if liability is assumed, is due to be DISMISSED as it is not a violation of clearly established law.

### d.    *Deliberate Indifference to Serious Medical Needs*

A prisoner states a valid claim under 42 U.S.C. section 1983, when there is indifference "by prison guards in intentionally denying or delaying access to medical care . . . or intentionally interfering with treatment once proscribed." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)(quotation and citation omitted). Beaty brings a claim for deliberate indifference to serious medical needs in count III based on the delay by prison guards in medical treatment after each of his alleged assaults. He alleges that Person, Grey, Baldwin, Steele, Dennis, Merritt, and Cannon knew that Beaty had been assaulted and delayed his treatment for hours and that Laseter, Lindsey, Pittman, and Joshua Pittman exacerbated his injury and delayed treatment. He further alleges that the Administrative Supervisors—Dunn, McDonnell, Lovelace, Culliver, and Naglich and the Prison Supervisors—Jones, Drake, Harris, and Laseter are liable because their policies and customs proximately caused Beaty's injuries.

### i.    Grey, Cannon, Merritt, and Steele

The Defendants who are alleged to have been present during the events in question and who have moved for dismissal of the deliberate indifference claim are Grey, Cannon,

Merritt, and Steele.  Those Defendants, however, do not address the merits of the claim, but only argue that the second amended complaint is an impermissible shotgun pleading and that it is not sufficient for the second amended complaint to simply allege that the Defendants knew that Beaty had been assaulted and had severe medical needs. (Doc. 109 at 4 & 9).  Additionally, they do not invoke qualified immunity as to this claim.  (Doc. 108 at 1).  The Court, therefore, turns to the sufficiency of pleading argument.

The paragraphs designated as count III refer generally to the knowledge of Grey, Cannon, Merritt, and Steele, but the facts section within the second amended complaint sets out more specifically the facts known to those particular Defendants.  The second amended complaint alleges that Grey witnessed Person's assault of Beaty and did not render medical aid. (Doc. 105 para. 71).  The second amended complaint also alleges that it was obvious to Grey from Beaty's profuse bleeding and protruding bone fragment that he urgently needed medical care. (*Id.* para. 74).  With regard to Steele, the second amended complaint alleges that Steele could see Beaty bleeding profusely on the bench, that Beaty could barely speak, and that he begged to be taken to the infirmary, but Steele refused. (*Id.* para. 79).  Cannon and Merritt also are alleged to have witnessed Beaty bleeding profusely, filling and emptying a styrofoam cup with blood over several hours, writhing in excruciating pain, and fading in and out of consciousness. (*Id.* para. 82).  The second amended complaint, therefore, does not just refer generally to Defendants, but alleges facts specific to each of these Defendants. The Court concludes that the claims against Grey,

Cannon, Merritt, and Steele do not violate notice pleading and the motion to dismiss resting on that ground is due to be DENIED.  *See* FED. R. CIV. P. 8(a)(2).

ii.     Administrative and Prison Supervisors

Culliver argues that the second amended complaint improperly lumps all ADOC officials together.  He also argues that his duties did not include the administration of health services and he had no authority over medical care, so no deliberate indifference claim to serious medical needs can be stated against him.

Similarly, Naglich, Lovelace, and McDonnell argue that according to the job titles alleged in the second amended complaint, they have no authority over the transportation of prisoners to medical units.  Dunn, Naglich, Lovelace, McDonnell, Drake, Harris, and Jones also argue that there are insufficient allegations relating to denial of medical care because there are only two instances identified in the second amended complaint of a delay in medical care; namely, a delay in May of 2017 by Person of treatment for an inmate exposed to mace and an officer blocking a prisoner from going to the infirmary.

Beaty responds that the large number of correctional officers who failed to provide assistance implicates the Supervisor Defendants.  That argument, however, has been rejected by the Eleventh Circuit and is, therefore, unavailing. *See Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011)("A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality.").  Additionally, Beaty argues that allegations of other incidents where

correctional officers supervised by the same supervisors failed to obtain medical assistance are a sufficient basis to hold them liable.

Unlike the claims against Grey, Cannon, Merritt, and Steele, the claims against the Administrative and Prison Supervisors for deliberate indifference to serious medical needs do not plead facts specific to each Defendant. All facts of the second amended complaint are incorporated by reference and no separate allegations establish each individual's knowledge or responsibilities. *Hall*, 2016 WL 5402748, *2. Given the difference in job titles pleaded in the second amended complaint and, presumably responsibilities, the Court cannot conclude that Beaty has sufficiently alleged a deliberate indifference claim against defendants who were not present at the scene. The Court finds, however, that Beaty should be given a last opportunity to attempt to plead a basis for supervisor liability for deliberate indifference to serious medical needs. *Id.* at *3.

### e. Civil Conspiracy

Beaty brings a federal civil conspiracy claim against all the Defendants in count VIa. The claim alleges that the Defendants and other co-conspirators not yet known reached an agreement among themselves to deprive Beaty of his right to be free from unreasonable harm and to fail to intervene to prevent harm. Beaty alleges that each of the Defendants was involved in the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding the use of force and medical treatment through the ADOC system.

The Defendants raise several grounds for dismissal as to this claim; namely, that there is no underlying constitutional violation, that there is no allegation of fact to show agreement, and that the intracorporate conspiracy doctrine bars this claim.

In response, Beaty cites the court to *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271 (11th Cir. 2002), and also argues that the intracorporate conspiracy doctrine does not apply because Beaty has alleged actions which would constitute a crime. *See Newsome v. Lee Cty, Ala.*, 431 F. Supp. 2d 1189, 1204-05 (M.D. Ala. 2006)(finding that the intracorporate conspiracy doctrine did not apply where officers were alleged to have engaged in conduct that was a violation of state criminal law).

*Rowe* is not a pleading case, but rather stands for the proposition that a plaintiff can prove agreement without a "smoking gun," but must show evidence of agreement. *Id.* at 1284-85.  In evaluating whether a plaintiff has sufficiently alleged a civil conspiracy, this Court must bear in mind that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556–57.  In the second amended complaint, Beaty alleges in a conclusory manner that the Defendants reached agreement among themselves to deprive him of his right to be free from unreasonable harm and fail to intervene. (Doc. 105 para. 194).  Further, Beaty has not separated out the Defendants and their specific actions.  The federal conspiracy claim, therefore, is due to be DISMISSED.  However, the Court will dismiss the claim without prejudice to being

repleaded because the Court cannot conclude at this point in the litigation, based on the facts currently alleged, that such pleading would be futile.

### E.  State-law Claims

The Defendants, having all been named in their individual capacities, have asserted state-agent immunity as to the state-law claims against them.  Because the negligent/wanton retention and intentional infliction of emotional distress claims underlie the conspiracy claim, the Court will begin with those first.

#### 1.  *Negligent/Wanton Retention*

The negligent/wanton retention claim in count VII is brought against the State of Alabama, Dunn, McDonnell, Lovelace, Culliver, Jones, Naglich, Drake, Harris, and Laseter.[7]  The individual Defendants moving to dismiss the claim include Dunn, McDonnell, Lovelace, Culliver, Jones, Naglich, Drake, and Harris.  The allegations of this claim are that the Defendants had a duty to act reasonably in retaining correctional officers, but knew or should have known that Person and Lindsey were dangerous to inmates, and negligently or wantonly retained Person and Lindsey as corrections officers.

The Defendants seek dismissal of these claims in this case, arguing that Beaty has failed to plead an employer-employee relationship and that state-agent immunity bars the negligence claim.  Beaty responds that the second amended complaint alleges that Person

---

[7]  In the caption of this count, Beaty refers to ADOC, but ADOC has not been named as a Defendant in this case.

and Lindsey were employed by the ADOC. The claims in this case, however, are against individual Defendants in their individual capacities, not the ADOC.

Federal district courts have concluded that because under Alabama law the torts of negligent or wanton retention require a plaintiff to show an employer knew or should have known its employee was incompetent, state law does not recognize a claim against an employee for the negligent or wanton retention of a subordinate employee. *See Byrd v. Buckner*, 2020 WL 2046375, at *9 (M.D. Ala. 2020)(citing *Doe v. City of Demopolis*, 799 F. Supp. 2d 1300, 1312 (S.D. Ala. 2011), *aff'd sub nom. Doe ex rel. Doe v. City of Demopolis*, 461 F. App'x 915 (11th Cir. 2012)). This Court is persuaded by that reasoning and concludes that the claims for negligent/wanton retention are due to be DISMISSED.

### 2. *Intentional Infliction of Emotional Distress*

Beaty brings an intentional infliction of emotional distress claim in count VIII against Person, Lindsey, Baldwin, Laster, Joshua Pittman, Pittman, and Grey, but only Grey seeks dismissal. Grey argues that she was discharging a duty and is therefore entitled to state-agent immunity, and that Beaty has failed to allege facts suggesting that Grey acted willfully, maliciously, fraudulently, in bad faith, or beyond her authority. (Doc. 109 at 13). In the reply brief, Grey contends that Beaty has failed to respond and, therefore, has abandoned his claim against Grey.

This Court cannot agree that Beaty has abandoned his claim against Grey. In his response brief, Beaty acknowledges that a category he identifies as "Correctional Officer Defendants" invoke state-agent immunity, and cites to the pages in the brief which invoke

state-agent immunity on Grey's behalf. (Doc. 117 at 48).   Beaty argues that two exceptions to state-agent immunity apply:  Grey violated the laws of the United States and Grey acted willfully, maliciously, fraudulently, and in bad faith. *See Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000).

The facts regarding Grey which are alleged within the second amended complaint are that Person told Grey to lock the B-Dorm door, which Grey did; Grey was able to witness the attack on Beaty during which he bled profusely; Grey ignored Beaty's pleas for help; Grey demonstrated guilt when she allowed Person to destroy evidence of his assault on Beaty; and that Grey acted with callous disregard for Beaty's health and safety. (Doc. 105 paras. 26, 66 & 84).   The Court cannot agree that Beaty has made only conclusory allegations of willful conduct that lack factual content. Accordingly, the Court finds that the Defendants have failed to show Grey's entitlement to immunity as to this state-law claim at this point in the litigation. *Windham v. City of Fairhope*, 2013 WL 1679355, at *13 (S.D. Ala. 2013)(noting that because the motion dismiss did not develop the argument that the plaintiff failed to allege any facts which support an assertion that the officers acted fraudulently, in bad faith, with malice or willfulness, the court has to "guess why they maintain the specific, detailed allegations of wrongdoing and nefarious purpose set forth in the Complaint are not sufficient to overcome state-agent immunity.").   The motion to dismiss is due to be DENIED as to this claim.

3.      *State-law civil conspiracy*

Beaty brings a single count of civil conspiracy under Alabama law in count VIb against "all Defendants," but in response to the motions to dismiss, Beaty has clarified that the underlying torts for his civil conspiracy claims under state law are the torts of negligent/wanton retention and intentional infliction of emotional distress. (Doc. 117 at 72).

As discussed above, the negligent or wanton retention claim which underlies the state-law conspiracy claim against the State, Dunn, McDonnell, Lovelace, Culliver, Jones, Naglich, Drake, and Harris is due to be dismissed; therefore, the civil conspiracy claim is also due to be DISMISSED. *See Shook v. St. Bede Sch.*, 74 F. Supp. 2d 1172, 1180 (M.D. Ala. 1999)(finding that plaintiff cannot get around a limitation of a claim of "liability to employers—because the tort of conspiracy fails if liability is unavailable in the underlying tort which is the aim of the alleged conspiracy.").

Conspiracy with the underlying tort of intentional infliction of emotional distress is asserted against Person, Lindsey, Baldwin, Grey, Laster, Joshua Pittman, and Pittman. The only movant as to that conspiracy claim, however, is Grey.[8]  Although the Defendants argue that Beaty only has alleged exceptions to state-agent immunity without factual content, as noted above, Beaty has alleged facts that Person told Grey to lock the B-Dorm door, which Grey did; Grey was in a position to witness the attack on Beaty during which

---

[8] In their reply, these Defendants adopt the argument of other Defendants that the intracorporate conspiracy doctrine applies, but only with respect to the federal, not the state, conspiracy claim.

he bled profusely; Grey ignored Beaty's pleas for help; Grey demonstrated guilt when she allowed Person to destroy evidence of his assault on Beaty; and that Grey acted with callous disregard for Beaty's health and safety. (Doc. 105 paras. 26, 66 & 84). The Court cannot conclude, therefore, that the conspiracy claim is due to be dismissed at this stage of the litigation.

## V.  CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1. The motion to dismiss (doc. 107) filed by the State of Alabama is GRANTED as to counts VIa, VIb, and VII on the basis of sovereign immunity and as to count IX for failure to state a claim and the State of Alabama is DISMISSED as a party.

2. The motion to dismiss or, in the alternative, to strike (doc. 108), the motion to dismiss (doc. 110), and the motion to strike or, alternatively, motion to dismiss (doc. 112) are GRANTED in part to the following extent:

   a. The Fictitious Parties are DISMISSED.

   b. The Eighth Amendment claims asserted through the Fourteenth Amendment in count III for deliberate indifference to medical needs against Culliver, Dunn, McDonnell, Lovelace, and Naglich, Jones, Drake, and Harris; in count IV for failure to protect against Culliver, Dunn, McDonnell, Lovelace, Naglich, Jones, Drake, and Harris, and in count VIa for civil conspiracy

against all Defendants are DISMISSED without prejudice to being repleaded.

c. The claim in count II for failure to intervene against and Culliver, Dunn, McDonnell, Lovelace, Naglich, Jones, Drake, and Harris; in count V for state-created danger against all Defendants; in count VIb for civil conspiracy of negligent or wanton retention against Culliver, Dunn, Lovelace, McDonnell, Naglich, Jones, Drake, and Harris; and in count VII for negligent or wanton retention against Jones, Culliver, Dunn, Lovelace, McDonnell, Naglich, Drake, and Harris are DISMISSED with prejudice.

3. The motion to dismiss or, in the alternative, to strike (doc. 108) is DENIED as to the claim in count II against Grey for failure to intervene; in count III against Grey, Cannon, Merritt, and Steele for deliberate indifference to serious medical needs; in count VIb against Grey for civil conspiracy of intentional infliction of emotional distress; and in count VIII against Grey for intentional infliction of emotional distress.

4. Beaty is given until **June 17, 2022,** to file a Third Amended Complaint which does not incorporate by reference any previous complaints, which separates out claims against each defendant, which complies with the *Federal Rules of Civil Procedure,* and is consistent with this Memorandum Opinion and Order.

32

DONE this 27th day of May, 2022.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE